Smith, J.
This was art action, in which on the answer and cross-petition of Judge Ashburn, as trustee for the first mortgage bond holders, the railroad of the defendant company was sold, under the order of the court of common pleas, and a decree entered, distributing the proceeds of sale to the various parties and lien holders, according to their several rights and priorities, as determined by the court. It was there found that T. A. Hardman had a valid claim against the railroad company, founded on a contract for the building of a bridge thereon over tbe east fork of the Little Miami river at Batavia, entered into between him and the Receiver of such road, acting under the order of the court, which had appointed him, and that he was entitled to be paid from the proceeds of the sale of the road, before payment to Ashburn, trustee. From this decree the latter appealed. We state our views on the questions raised and argued, briefly:
1st. We are of the opinion that the finding of the amount in favor of Hardman, and the decree that it be paid from tbe proceeds of sale before any payment to Ashburn, trustee, having been vacated by the appeal, that the whole controversy between them is before us, precisely as it was before the court of common pleas, and the question of tbe validity of the *201 claim of Hardman, and its priority to that of Ashburn, is to be decided by us.
2d. We understand it to be conceded by counsel for the trustee, that Hartman has a valid claim for the amount found in his favor by the court of common pleas, unless by the breach of the contract so entered into between him and the Receiver, or by his negligence or want of skill in doing the work contracted by him to be done, the company has suffered loss to an amount equal to, or greater than his claim against it. It is also admitted by the counsel for Hardman, that by the fall of the bridge while in process of construction by him, the company has suffered loss to an amount far in excess of his claim.
3d. The question of the liability of Hardman for this loss depends upon the construction to be given to the written contract, and on the evidence in the case. And in the first place we may say, that in our judgment, Hardman, by this contract, did not warrant or guarantee that during the progress of the work the trains of the company should pass safely over said bridge. The circumstances were these : In July, 1884, at the time of the making of the contract in question, the railroad company had in operation a railroad from Cincinnati to some point east of Batavia. Some years before, a bridge had been built over the east fork at this point, and was in use — trains passing over it daily. But the Receiver desiring to reconstruct it, plans and specifications were prepared, and on July 7, 1884, a contract was entered into with Hardman, by which he was to furnish all materials (except as therein provided), and construct in a skillful and workmanlike manner, in every respect, complete and ready for crossing, a Howe truss deck bridge of four spans, the length of which was given, and of such materials and in such a manner as would strictly conform to the plans, specifications and other diagrams of the several plans which were annexed to, and made part of the agreement. The work was to be commenced immediately, and completed by Oct. 15, 1884, and it was stipu *202 lated that if the Receiver should desire to change the guage of the road before Hardman was “ready to put in the false work necessary to carry the floor system of the present bridge” he might have it done by paying the cost of the additional false work necessary to be put in. It was also provided that the work should be executed under the superr vision of the chief engineer of said company, who should have full power to reject any and all materials and workmanship which did not in his opinion conform to the spirit of the agreement. It stipulated further that “the above work is to be done in such manner as not to interfere with the running of the trains over the road.”
The plans and specifications also, as we understand, show .that the track of the road, as it then stood, was not to be disturbed (at least until the final completion of the work), nor was it to rest immediately upon the timbers that were to be placed there by Hardman, but was to be about four feet above' them, and to be supported by blocking the same up, and which had been done, and the original track as thus supported was in use at the time of the accident. This was so done, evidently, with the purpose of lowering the track the four feet when the company saw proper to do so — and we may say further that it is clear from the evidence that all of this work had been done under the supervision of the chief engineer of the company, who approved of the mode adopted to support the track as it stood, and of the way in which it was carried out.
It seems to us, as we have said, that Hardman, by the contract, did not warrant or guarantee the safety of the bridge while the work was being done. That the maintenance of the track over the bridge, as it stood when the contract was entered into, was not committed to him, but was retained by the company, which also fully reserved tlffe right to direct the manner in which the work should be done — and that thus Hardman was to support the track, and so arrange his work thereon, as not to interfere with the running of trains over the road.
Of course, if there was negligence or unskillfulness on his *203 part which caused the accident, even when carrying out the directions of the engineer, he would be liable therefor. But we are unable to see from the evidence that such is the case. The probability is that the injury was caused by a derailment of the engine drawing the train, at a point west of that where the bridge fell, and, by the bumping of the engine over the cross-ties and timbers the structure was so jarred and loosened that it fell. Whether it was brought about by the breaking of the axle of the engine, (as there is 'reason to believe), or by some fault in the original track itself, (but which was unknown to Hardman), can not be told; but we think that Hardman was not responsible for either, and our .finding will be in his favor.
Simrcitt & Mack, attorneys for Hardman.
O. B. Matthews, attorney for trustee of the bond holders.